Peter K. Michael
Attorney General

Daniel E. White
Deputy Attorney General

John H. Ridge [Wyo. State Bar No. 7-4676]
Supervising Attorney General
2424 Pioneer Avenue, 2nd Floor
Cheyenne, Wyoming 82002
(307) 777-5996
(307) 777-8920 Facsimile
john.ridge@wyo.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| ROGELIO RODRIGUEZ, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 17-CV-14-S |
| | ) | |
| PARK COUNTY DETENTION CENTER, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants, Sergeant Jona Harris, Lieutenant Joseph Torczon, and Deputy Mark Longo (referred to herein as the "individual defendants"), submit this memorandum in support of their Motion to Dismiss all claims against them in their individual capacities.

### I.    OVERVIEW

Rogelio Rodriguez Jr. ("Plaintiff" or "Rodriguez") is an inmate in the Park County Detention Center, located in Cody, Wyoming.  Rodriguez has filed three separate complaints with this court against the defendants.  The first complaint was filed on January 20, 2017 [Doc. No. 1, filed in Case 2:17-cv-00014-SWS] and the second complaint was filed on February 6,

2017.  [Doc. No. 1, filed in Case 2:17-cv-00023-SWS.]   The court consolidated these two complaints into this single action.  [Doc. No. 6.]  The third complaint, otherwise referred to as the Amended Complaint, was filed on March 3, 2017.  [Doc. No. 29.]

His first complaint contains two causes of action, which, for the sake of clarity, will be referred to hereinafter as the First Cause of Action and the Second Cause of Action.  The second complaint contains two causes of action, which will be referred to as the Third Cause of Action and the Fourth Cause of Action.  The third complaint also contains two causes of action, which will be referred to as the Fifth Cause of Action and the Sixth Cause of Action. Rodriguez has also filed multiple records with the court in the consolidated case.  [*See, e.g.*, Doc. Nos. 4, 5, 10, 11.]  It is our understanding that these records are intended to be factual support for the six causes of action and, hence, will not be addressed in this motion to dismiss. Concurrently with this motion, the individual defendants have filed a motion to strike these records.

1.     The First Cause of Action.  The first cause of action arises from a fight started by Rodriguez.  On January 9, 2017, Plaintiff attended a Bible study class.  [Doc. 1, filed in Case 2:17-cv-00014-SWS, at 5-6.]  Upon entering the classroom, he noticed another inmate— Willie Ayers—who will be testifying against Plaintiff in Plaintiff's criminal trial.  [*Id.*] Plaintiff attacked Ayers and was subsequently charged with assault.  [*Id.*]  Despite requesting to do so, Rodriguez complains that he should not have been allowed to attend the same Bible study as Ayers since he had a no-contact order issued by a court.  [*Id.*]  At the hearing the next day on the assault, the Judge presiding over the hearing explained to Rodriguez that the no-contact order did not prohibit Rodriguez from being in the same room with Ayers.  [*Id.*]  It

simply meant he could not speak to Ayers.  [*Id.*]  Nevertheless, as a result of this incident, Plaintiff has asserted a section 1983 claim for violation of his due process rights and a *Bivens* claim.  Nowhere are Sergeant Harris, Lieutenant Torczon, or Deputy Longo mentioned in this cause of action.

        2.    <u>The Second Cause of Action</u>.  The second cause of action arises from facts occurring on January 11, 2017.  [*Id.* at 7-8.]  According to the complaint, while serving dinner, Sergeant Harris approached Plaintiff's cell and yelled at him.  [*Id.*]  Being upset over a previous grievance Plaintiff had filed against her, Sergeant Harris allegedly made the following statements:

        (i)    "I am not a mind reader how am I supposed to know your [sic] indigent."
        (ii)   "I got something on you."
        (iii)  "You're the one in orange I get to go home!"
        (iv)  "I could punch you!"
        (v)   "Peace Out!"

[*Id.*]  As a result of being yelled at by Sergeant Harris, Plaintiff states that he feels disrespected, threatened, and bullied, and has suffered stress, anxiety, and depression.  [*Id.*]  These facts, Plaintiff asserts, have resulted in a violation of his civil rights under section 1983, based on allegations of discrimination, harassment, and threat.  Plaintiff also asserts a *Bivens* claim and a claim under 28 U.S.C. § 1331.

        3.    <u>The Third Cause of Action</u>.  Plaintiff's third cause of action arises from an incident that occurred on January 30, 2017.  [Doc. No. 1, filed in Case 2:17-cv-00023-SWS, at 5-6.]  Sergeant Harris informed Plaintiff that she had shred a grievance that Plaintiff wrote on Jan. 11, 2017, but that she did not do it on purpose.  [*Id.*]  The grievance had been filed against Harris for alleged threats and harassment.  [*Id.*]  Plaintiff asserts that the shredding of

his grievance was "unprofessional and disrespectful and careless." [*Id.* at 5.] Plaintiff also alleges that Sergeant Harris shred other grievances, but he does not specify the grievances to which he is referring. [*Id.*]

Plaintiff also complains that he did not get to appeal his grievance, because Sergeant Harris took the "liberty to chek [sic] or ex out void the appeal." [*Id.* at 6.] It is unclear where this information arises from, since Plaintiff previously claimed that Sergeant Harris had, in fact, shred his grievance.

Lastly, Plaintiff asserts that he wrote a grievance about the shredding of his previous grievance. [*Id.*] He hopes that this grievance does not get shred also; he believes he is going through the proper grievance processes; and, he is "tired of this unprofesionalism [sic], disrespect, carelessness, [and] discrimination[.]" [*Id.*]

Plaintiff states that he is equal to every other inmate in the detention center and he does not understand why his grievance is being treated differently from other grievances. [*Id.* at 5.] As a result, he is asserting civil rights violations based on Sergeant Harris's alleged discriminatory application of the grievance process. [*Id.* at 4.]

4.      The Fourth Cause of Action.  The fourth cause of action arises from a missing package of underwear.  On January 10, 2017, Plaintiff wrote a grievance complaining that Sergeant Harris did not bring him certain items that were supposedly delivered to him by his sister and placed in a locker for delivery: namely brief underwear. [*Id.* at 7-8.] The next day, on January 11, 2017, Sergeant Harris and Deputy Randol informed Plaintiff that they had located a wrapper for a package of underwear and a package of socks with two pairs missing, and they gave him the package of socks. [*Id.*]  Later, Sergeant Harris located a misplaced

package of boxer underwear which she delivered to Plaintiff, stating that she had found his missing underwear. [*Id.*]   Plaintiff subsequently claimed that his sister sent him briefs, not boxer style underwear, and that he felt compelled by Sergeant Harris to keep the boxers. [*Id.*] He also admits that it was Deputy Duneman who received the underwear from his sister and placed them in Plaintiff's locker, not Sergeant Harris. [*Id.*]

As a result of the allegedly missing underwear, Plaintiff is now asserting a claim for lost property, presumably under section 1983.

5.   <u>The Fifth Cause of Action</u>.   The fifth cause of action arises from an allegation that a piece of Plaintiff's legal mail was opened prior to being delivered to him. On February 12, 2017, Plaintiff claims that a piece of legal mail sent to him by this Court was opened prior to being received. [Doc. 29, at 5-6.] He asserts that "the seal [of the envelope] was peeled off regardless to what was used to seal the legal mail it was tampered with opened exposing my legal documents[.]" [*Id.* at 5.]

Plaintiff admits that he does not know who opened this particular piece of mail, if anyone:

- "I went through the grievance process . . . and got no resolution or names to who might of opened my legal mail." [*Id.* (spelling corrected).]

- "[I]t was clear that my mail was opened but no one wants to take accountability or be held accountable." [*Id.* (spelling corrected).]

- "I wrote a grievance towards Deputy Longo[, but] he stated [that he] did not have access to the legal documents of [sic] had anything to do with the opening of the envelope." [*Id.* (spelling corrected).]

- "I appealed the grievance[.]  Deputy Harris answered the appeal fo[r] Deputy Longo resulting with no resolution or names of who opened my legal mail[.]" [*Id.* at 6 (spelling corrected).]

- "I wrote a grievance to Lt. Torczon[.]  He answered back with no resolution or names to who might of opened my legal mail."  [*Id.* (spelling corrected).]

While he admits that he does not know who allegedly opened his mail, Plaintiff simply filed this cause of action against the correctional officers who dealt with his grievances: Sergeant Harris, Lieutenant Torczon, and Deputy Longo.  [*Id.* at 3-4.]

6.    The Sixth Cause of Action.    Plaintiff's sixth cause of action asserts that Lieutenant Torczon ordered the destruction of a Certificate of Penal Institution, and that this certificate is a "federal paper."  [*Id.* at 7-8.]   It is unclear what Plaintiff is referring to when he mentions a Certificate of Penal Institution.  Without more, it is impossible to assess this claim.

## II.    STANDARD OF REVIEW

The individual capacity claims asserted against Sergeant Harris, Lieutenant Torczon, and Deputy Longo should be dismissed for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  When reviewing Rule 12(b)(6) motions involving pro se plaintiffs, the District Court for the Northern District of Oklahoma succinctly summarized the Tenth Circuit's standard, stating as follows:

> When ruling on a defendant's motion to dismiss, the Court must accept as true all the factual allegations contained in the complaint. However, on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation. The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal* stressed that it is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability and that [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.
>
> Furthermore, the Court construes *pro se* complaints liberally, but is mindful that it is not the proper function of a court to assume the role of advocate for the pro

se litigant. The burden is on the plaintiff to craft an adequate complaint that contains enough factual allegations to state facially plausible claims for relief and provide fair notice to defendants of the nature of the claims against them. We are especially critical of complaints that do not articulate specific times, places, or persons involved in the alleged misconduct because such complaints give defendant[s] seeking to respond to plaintiffs' conclusory allegations ... little idea where to begin.

*Schoonover v. Stuart*, 2010 WL 3022845, 2 (N.D.Okla. 2010) (internal quotations and citations omitted).  *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir.  2012) (same).  Extending this analysis, the Tenth Circuit has additionally stated that in section 1983 cases involving qualified immunity, as here, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

### III.    ARGUMENTS FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

**A.    Plaintiff's First Cause of Action Is Not Directed at the Individual Defendants: Sergeant Harris, Lieutenant Torczon, and Deputy Longo.**

Neither the facts nor the legal assertions contained in the first cause of action are directed towards or even mention the individual defendants: Sergeant Harris, Lieutenant Torczon, and Deputy Longo.  *See id.*  This motion, therefore, does not further address this claim.

**B.    Any Claims Arising Under *Bivens* and 28 U.S.C. § 1331 Should Be Dismissed.**

Plaintiff's second cause of action asserts claims arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 28 U.S.C. § 1331. The purpose of a *Bivens* claim is to deter individual federal officers from committing

constitutional violations.  *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

Because the individual defendants are all county employees of the Park County Detention

Center, and not federal employees, the *Bivens* claim should be dismissed.  Moreover, section

1331 is simply a jurisdictional statement and does not provide a cause of action.  Hence, the

claim arising under this statute should also be dismissed.

**C.     The Individual Defendants—Sergeant Harris, Lieutenant Torczon, and Deputy Longo—Are Entitled to Qualified Immunity On the Second, Third, Fourth, Fifth, and Sixth Causes of Action.**

   **1.     *The Doctrine of Qualified Immunity.***

The individual defendants are entitled to dismissal of the second, third, fourth, fifth,

and sixth causes of action on the grounds of qualified immunity.  The doctrine of qualified

immunity is well-known in the Tenth Circuit, and has been succinctly summarized as follows:

> Qualified immunity protects federal and state officials from liability for discretionary functions, and from the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit. Issues of qualified immunity are best resolved at the earliest possible stage in litigation. If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit.

> Qualified immunity shields government officials from liability where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity also shields officers who have reasonable, but mistaken beliefs and operates to protect officers from the sometimes hazy borders of the law. When a defendant asserts qualified immunity, the plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct.

*Glover v. Gartman*, 899 F. Supp. 2d 1115, 1137 (D.N.M. 2012) (internal quotation marks,

brackets and citations omitted).  *Accord Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011).

What is more,

> Qualified immunity is an immunity from suit rather than a mere defense to liability. And because it is "the norm" in private actions against public officials, officials enjoy a presumption of immunity when the defense of qualified immunity is raised.

*Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (internal citations and quotation marks omitted).

To overcome this presumption and survive a Rule 12(b)(6) motion to dismiss based on qualified immunity, a plaintiff must "nudge their claims across the line from conceivable to plausible . . . by alleg[ing] facts sufficient to show (assuming they are true) that the defendants plausibly violated the plaintiff's constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. While a case directly on point is not required to clearly establish the right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (internal citation omitted).

"[I]n evaluating dismissals in qualified immunity cases as to dismissals generally, complaints in § 1983 cases … pose a greater likelihood of failures in notice and plausibility because they typically include … multiple defendants." *Robbins*, 519 F.3d at 1249 (internal citations and quotation marks omitted). The relevant plausibility standard "may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity" early in the action. *Id.* To avoid this "bite," a plaintiff must "isolate the allegedly unconstitutional acts of each defendant" by clarifying "who is alleged to have done what to whom." *Id.* at 1249-50. Collective allegations fail because they do "not provide adequate notice … of the claims against each" official. *Id.* at 1250.

2.      ***Because Plaintiff Failed to Adequately Plead His Causes of Action, Sergeant Harris, Lieutenant Torczon, and Deputy Longo Are Entitled to Qualified Immunity.***

Between his three complaints, Plaintiff has asserted causes of action arising under section 1983, *Bivens*, and 28 U.S.C. § 1331.  When asked in the form complaints "which of your federal constitutional or federal statutory rights have been violated[,]" Plaintiff simply asserts that his "civil rights" have been violated, and then he appends a laundry list of generalized, factual assertions that do nothing more than summarize his claims:

(i)      The First Cause of Action (fight in Bible study) is not addressed to the individual defendants, as mentioned above.

(ii)     The Second Cause of Action (five statements allegedly made by Sergeant Harris): civil rights, *Bivens*, 28 U.S.C. § 1331, discrimination, harassment, and threat.

(iii)    The Third Cause of Action (Sergeant Harris accidently shreds grievance): civil rights, grievance process, and discrimination.

(iv)    The Fourth Cause of Action (missing underwear): civil rights, locker request, and property lost.

(v)     The Fifth Cause of Action (opening of legal mail): civil rights, and legal mail opened or tampered with.

(vi)    The Sixth Cause of Action (destruction of Certificate of Penal Institution): civil rights, and certificate of penal institution was destroyed.

It is unclear from the three complaints what civil rights Plaintiff is actually stating have been violated.  Other than claiming general allegations of civil rights violations, he has not cited any particular right or case law establishing that any particular individual defendant violated any clearly established federal constitutional or statutory right, and the individual defendants are not required to do this analysis for him.  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (a complaint must provide a defendant fair notice of what the claims are and the grounds upon which they rest).

Moreover, the law is well established in these circumstances: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (overturned only as to order in which courts may consider the two prongs of the qualified immunity test).  Plaintiff must identify existing law which is sufficiently clear to give the individual defendants "fair notice that [their] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Plaintiff has failed to do so. Moreover, he has failed to sufficiently allege, with supporting facts, that any individual defendant "knew or reasonably should have known" that his or her individual conduct was illegal.  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

Qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (internal citation omitted), and protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because Plaintiff cannot meet either element of the two-part qualified immunity inquiry, the individual defendants are entitled to qualified immunity.

### 3. *Even If Plaintiff Adequately Plead the Elements of Viable Causes of Action, Sergeant Harris, Lieutenant Torczon, and Deputy Longo Are Still Entitled to Qualified Immunity.*

Even if we assume that Plaintiff has adequately set forth his causes of action such that the individual defendants can understand the allegations and have fair notice of what the rights are that they allegedly violated, Plaintiff's causes of action still fail as a matter of law.

11

(a)      <u>The Second Cause of Action</u>.  The second cause of action, which is directed towards Sergeant Harris, arises solely from five statements allegedly made by her to Plaintiff:

     (i)      "I am not a mind reader how am I supposed to know your [sic] indigent."
     (ii)     "I got something on you."
     (iii)    "You're the one in orange I get to go home!"
     (iv)     "I could punch you!"
     (v)      "Peace Out!"

As a result of these statements, Plaintiff asserts discrimination, harassment, and threat as the basis for his section 1983 claim.

But the Tenth Circuit has stated on several occasions that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'"  *Alverez v. Gonzales*, 155 Fed.Appx. 393, 396 (10th Cir. 2005) (unpublished).  *See also Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir.  1995) (upholding dismissal of eighth amendment claim on summary judgment due to verbal nature of the claim); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir.  1998) ("Although plaintiffs allege Mr. Pulsipher subjected them to severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment.").  Because no reasonable person would interpret the alleged comments made by Sergeant Harris as creating a terror of instant and unexpected death in Plaintiff, the second cause of action should be dismissed.

(b)      <u>The Third Cause of Action</u>.  On January 30, 2017, Sergeant Harris informed Plaintiff that she had accidently shred a grievance that Plaintiff wrote on Jan. 11, 2017.  Plaintiff asserts that he is equal to every other person in the detention center and, as a result of her actions, Plaintiff claims that Sergeant Harris discriminated against him in the application

of the grievance process.

Class of one discrimination claims, which this appears to be, require Plaintiff to show a "campaign of official harassment directed against him out of sheer malice," which he cannot do. *Jennings v. City of Stillwater*, 383 F.3 1199, 1211 (10th Cir. 2004) (internal quotation marks and citations omitted). *See also Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848-49 (10th Cir. 2005) (class of one plaintiffs must show that they were singled out for persecution due to some animosity and that a defendants actions were wholly unrelated to any legitimate state activity). According to the second complaint, upon learning that she had accidently shred his grievance, Sergeant Harris immediately informed Plaintiff of the action. One mistaken action, followed by Sergeant Harris's action of informing the Plaintiff of the mistake, does not constitute an official campaign of harassment; and, it certainly fails to establish that Sergeant Harris acted out of malice. What is more, by his own admission Plaintiff was also able to file another grievance about this matter. So there was no harm to him as a result of the incident.

Plaintiff tries to bolster his cause of action by generally alleging that Sergeant Harris shred other grievances. But he does not specify the grievances to which he is referring and he does not provide any other facts about these grievances. Such generalized allegations are insufficient to sustain a claim under F.R.C.P. 12(b)(6), *see Robbins*, 519 F.3d at 1250 (complaint must provide fair notice as to the basis of claims, as distinguished from collective allegations), and they certainly fail to establish an official campaign of harassment conducted out of malice.

(c)      The Fourth Cause of Action.  The fourth cause of action, which arises from a missing package of underwear, is directed specifically towards Sergeant Harris.  Plaintiff asserts that Deputy Duneman, who is not a named defendant in this case, received underwear from Plaintiff's sister and placed them in Plaintiff's locker.  When asked to retrieve them, Sergeant Harris went out of her way to locate the underwear and bring them to Plaintiff. Plaintiff doesn't believe these were the correct underwear, so he filed a section 1983 claim against Sergeant Harris based on lost property.

It appears from the facts that Plaintiff is attempting to argue a Fourteenth Amendment claim based on the idea that Sergeant Harris was somehow negligent in recovering Plaintiff's underwear.  But the United States Supreme Court has previously rejected the idea that negligence can give rise to a Fourteenth Amendment challenge.  *Daniels v. Williams*, 474 U.S. 327, 332-33 (1986) (where a government official's act causing injury to life, liberty, and property is merely negligent, this does not give rise to a constitutional claim).

What is more, when Sergeant Harris tried to remedy the situation by locating the underwear for Plaintiff, he rejected the post-deprivation remedy and accused Sergeant Harris of coercing him into taking the new underwear.  Sergeant Harris's attempt to resolve the issue hardly rises to the level of a Fourteenth Amendment violation.

(d)      The Fifth Cause of Action.  The fifth cause of action, which is directed at all three individual defendants, arises from an allegation that a piece of Plaintiff's legal mail was opened prior to being delivered to him.  Plaintiff, however, admits that he does not know who opened this particular piece of mail, if anyone:

- "I went through the grievance process . . . and got no resolution or names to who might of opened my legal mail." [Doc. 29, at 5 (spelling corrected).]

- "It was clear that my mail was opened but no one wants to take accountability or be held accountable." [*Id.* (spelling corrected).]

- "I wrote a grievance towards Deputy Longo[, but] he stated [that he] did not have access to the legal documents of [sic] had anything to do with the opening of the envelope." [*Id.* (spelling corrected).]

- "I appealed the grievance[.]  Deputy Harris answered the appeal fo[r] Deputy Longo resulting with no resolution or names of who opened my legal mail[.]" [*Id.* at 6 (spelling corrected).]

- "I wrote a grievance to Lt. Torczon[.]  He answered back with no resolution or names to who might of opened my legal mail." [*Id.* (spelling corrected).]

This shotgun approach to filing claims is exactly what *Robbins* was designed to prevent. *Id.* at 1249-50 (a plaintiff must "isolate the allegedly unconstitutional acts of each defendant" by clarifying "who is alleged to have done what to whom.").  Moreover, Plaintiff admits that he is not aware of any individual defendants' personal participation in the alleged constitutional violation, which is required to state a section 1983 claim.  *Bennet v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir.  1976) ("Personal participation is an essential allegation in a § 1983 claim.").

(e)    The Sixth Cause of Action.  Plaintiff's sixth cause of action asserts that Lieutenant Torczon ordered the destruction of a Certificate of Penal Institution, which is a "federal paper."  This claim is incomprehensible, because there is no such federal document as a Certificate of Penal Institution.  Without more information, the individual defendants cannot reasonably defend against this claim.  *See Robbins* at 1249-50.

15

**D.      Under 28 U.S.C. § 1915(e)(2)(B)(iii), this Court Must Dismiss this Case Because Plaintiff Sued Multiple Defendants for Monetary Relief Who Are Immune from such Relief.**

The text of § 1915(e)(2)(B)(iii) states:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that … the action or appeal … seeks monetary relief against a defendant who is immune from such relief.

*1.      The Plain Language of § 1915(e)(2)(B)(iii) Requires Dismissal of the Entire Case.*

Statutory interpretation begins with the text. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). A court must first determine "whether the statutory text is plain and unambiguous." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). If the statute is clear, a court "must apply the statute according to its terms." *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

First, section 1915(e) distinguishes between "may" and "shall."  Section 1915(e)(1) says that a court "may" request an attorney for a person that cannot afford counsel.  By contrast, section 1915(e)(2) lists the circumstances under which a court "shall" dismiss a case.  "When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016).

Second, section 1915(e)(2) requires dismissal of the entire case.  While this section does not define the term "case," the dictionary definition is quite clear: a "case" is a "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity[.]"  Black's Law

Dictionary (10th ed. 2014).   And, more importantly, the Tenth Circuit recently provided a broad reading of the term "case." *Vogt v. City of Hays, Kan.*, 844 F.3d 1235, 1242–46 (10th Cir. 2017) (construing "criminal case" to include all stages of a criminal proceeding, not just the trial).

Third, the term "action" in the statute also refers to Rodriguez's entire case.  *See Thomas v. Parker*, 672 F.3d 1182, 1183 (10th Cir. 2012) (noting the difference between dismissing an "action" and dismissing a "claim" under 28 U.S.C. § 1915(g)).   In other words, the term has the same meaning as "case."  *See* Black's Law Dictionary (10th ed. 2014) (defining "action" as a "civil or criminal judicial proceeding.").

Thus, if one or more of the listed conditions in § 1915(e)(2) applies, the court is required to dismiss Rodriguez's entire case.   One such condition is found in section (e)(2)(B)(iii). Because Rodriguez's "action" seeks "monetary relief" against "a defendant" that is immune from such relief, the Court must dismiss Rodriguez's entire case.

> **2.   The Broader Context of the PLRA is Consistent with the Individual Defendants' reading of § 1915(e)(2)(B)(iii).**

The individual defendants' reading of § 1915(e)(2)(B)(iii) is consistent with the broader context of the Prison Litigation Reform Act of 1996 (the "PLRA").   PL 104–134, April 26, 1996, 110 Stat 1321.  Section 1915A allows a court to screen prisoner complaints that seek relief against the government, regardless of whether the prisoner is proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915A(a).  This screening provision states as follows:

> On review, the court shall identify cognizable claims or dismiss the complaint**, or any portion of the complaint**, if the complaint—
>
> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

**(2)** seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b) (emphasis added).  In other words, section 1915A(b) allows the Court to screen a complaint and dismiss only those claims for which a defendant would be immune. But this is not the case with section 1915(e)(2)(b)(iii), which does not contain the "or any portion of the complaint" language contained in § 1915A(b). When a defendant like Rodriguez is proceeding *in forma pauperis*, and is seeking monetary relief against defendants who are immune, the Court must dismiss the entire case.

>   *3.    Tenth Circuit Case Law Supports the Individual Defendants' Interpretation of Section 1915(e)(2)(B)(iii).*

Further support for this interpretation comes from the Tenth Circuit case of *Olson v. Carmack*. 641 F. App'x 822 (10th Cir.  2016). In *Olson*, the district court dismissed the plaintiff's amended complaint under § 1915(e)(2)(B) for failure to state a claim.  *Id.* at 826. The Tenth Circuit affirmed, noting that an *in forma pauperis* plaintiff has "a corresponding obligation to bring **only** meritorious litigation."  *Id.* (emphasis added).  But in a footnote, the Tenth Circuit noted that the district court could have alternatively dismissed the plaintiff's amended complaint under section 1915(e)(2)(B)(iii) "because **many** of the defendants are immune from suit …." *Id.* at n.3 (dicta) (emphasis added).  *Accord Perales v. Boehner*, 2012 WL 1821379 at *2 (W.D. Wash. May 18, 2012).

>   *4.    Policy Considerations Support the Individual Defendants' Interpretation of Section 1915(e)(2)(B)(iii).*

"The federal *in forma pauperis* statute, enacted in 1892 and presently codified as 28 U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). "But with that privilege comes

a corresponding obligation to bring only meritorious litigation." *Olson*, 641 F. App'x at 826. Courts have recognized several problems with meritless prisoner litigation.

"First, frivolous suits unduly burden the courts . . . sometimes obscuring meritorious claims[.]" *Hosley v. Bass*, 519 F. Supp. 395, 406 (D. Md. 1981) (internal citations omitted). "Second, they cause a significant expenditure of public monies." *Id.* Also, frivolous "suits permit a plaintiff to utilize the vast resources of the federal government to harass or burden an individual defendant." *Id.*

The individual defendants' interpretation of § 1915(e)(2)(B)(iii) is consistent with the policy concerns that *Hosley* highlighted: forcing *in forma pauperis* plaintiffs like Rodriguez to be selective when suing defendants prevents these plaintiffs from bringing harassing litigation and forces them to be selective when bringing claims.

**E.     Pursuant to 42 U.S.C. § 1997e(e), Plaintiff's Claims for Damages Must Be Dismissed.**

42 U.S.C. § 1997e(e) states as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Plaintiff has not plead any physical injuries whatsoever.  Yet, his first complaint specifically seeks damages for mental injuries and the other two complaints seek damages for what appears to be an emotional need for "justice" and to have somebody "pay consequences."  To the extent his complaints seek damages for mental or emotional injury, the claims giving rise to these alleged injuries should be dismissed.

## IV.    CONCLUSION

Plaintiff's claims lack merit.  *Graham v. Taylor*, 640 Fed.Appx. 766, 768 (10th Cir. 2016) (unpublished) ("A claim is frivolous if it is based on an indisputably meritless legal theory or founded on clearly baseless factual allegations." (internal quotation marks omitted)). There are no viable legal theories to support Plaintiff's claims, and, even if there were, Plaintiff has not plead sufficient factual bases to support the claims.  Therefore, for the reasons set forth above, the individual defendants respectfully request that the Court grant their Motion to Dismiss and dismiss all claims against them.  They also request that the Court impose one or more strikes against Plaintiff under the PLRA for failing to state a claim and filing frivolous claims.  *See id.* at 769-70 (imposing two strikes on the grounds requested here).

**DATED** this 22nd day of March, 2017.

/s/ John H. Ridge
John H. Ridge
Supervising Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that I have sent a copy of the foregoing on this 22nd day of March, 2017, to the following individuals:

Rogelio Rodriguez, Jr.                          [✓] U.S. MAIL
Park County Detention Center
1402 Riverview Drive
Cody, Wyoming 82414

Thomas Thompson                                [✓] E-MAIL
tthompson@wyomingattorneys.net

s/ MaryBeth Oatsvall
MaryBeth Oatsvall
Office of the Wyoming Attorney General